UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| ULTIMATE PROFESSIONAL GROUNDS MANAGEMENT, INC., | CIVIL ACTION NO. |
| Plaintiff | |
| V. | |
| NATIONAL CASUALTY COMPANY, | |
| Defendant. | SEPTEMBER 8, 2014 |

## **COMPLAINT**

### **JURISDICTION**

1. At all relevant times herein, Ultimate Professional Grounds Management Inc., ("Ultimate"), was a Connecticut corporation, located at 31 Tosun Road, Wolcott, Connecticut.

2. Upon information and belief, at all relevant times herein, National Casualty Company ("NCC") was a company with its principal place of business located at One West Nationwide Boulevard, Columbus, Ohio, and which was licensed by the Connecticut Department of Insurance to sell insurance.

3. This dispute arises over a failure by NCC to honor its contractual obligations under policies issued to Ultimate to pay the settlement of a claim made by the United States Department of Labor for "back wages" which settlement exceeds $75,000.

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

## FACTS

5. NCC issued two policies of insurance to Ultimate: (i) Policy No. EKO3080263 issued for the period December 2, 2012 to December 2, 2013 ("2012 Policy," attached as Exhibit A) and (ii) Policy No. EKO3116897, issued for the period December 2, 2013 to December 2, 2014 ("2013 Policy," attached as Exhibit B)(collectively, referred to as, "Policies.")

### CLAIM BY DEPARTMENT OF LABOR

6. In late November, 2013, the United States Department of Labor Wage and Hour Division ("D.O.L.") advised Ultimate that, based on a routine audit of Ultimate's H-2B work program involving foreign workers, it had reached the opinion that Ultimate had violated provisions of the H-2B program, concluding that, as a remedy, Ultimate should pay sums as "back wages" to some of its foreign workers, because Ultimate had failed to pay them the proper amounts, as well as to certain eligible U.S. citizen workers whom it had not retained as employees ("Claim"). Ultimate retained the law firm of Jackson Lewis as its counsel to represent it regarding the Claim.

7. Upon information and belief Ultimate's insurance broker notified NCC about the Claim on or about December 12, 2013.

8. NCC acknowledged the Claim by letter dated January 29, 2014 (attached as Exhibit C), and agreed to pay defense costs incurred by Ultimate to respond to the Claim, specifically agreeing to Jackson Lewis remaining as defense counsel for Ultimate and specifying hourly rates by which Jackson Lewis personnel would be paid in this role. However, NCC denied that it had any obligation to pay any portion of any settlement or award issued to the D.O.L. as a result of the Claim, asserting in sum and

substance that, although the Policies specified in multiple places that they provided coverage for "back pay," NCC would not pay any sums for what the D.O.L. termed "back wages." NCC took this position because it maintained that the Losses that it agreed to pay under the Policies did not include, "wages, other than back pay or front pay." In other words, NCC asserted that "back wages" were somehow different than "back pay."

9. On March 18, 2014, the D.O.L. issued an "Administrator's Determination," Reference No. 1662573 ("Complaint", attached as Exhibit D), identifying violations and the remedy which the D.O.L. determined should be imposed, requesting that Ultimate pay a total of $407,413.29 in "back wages and penalties."

10. The D.O.L. and Ultimate agreed to mediate the Claim on June 9, 2014, with Jackson Lewis communicating with NCC and Ultimate regarding the upcoming mediation and its assessment of exposure. On June 3, 2014, NCC sent another letter to Ultimate, once again stating that it would not make any payment toward any settlement reached between Ultimate and the D.O.L. (6/3/14 denial letter attached as Exhibit E).

11. After receiving the June 3, 2014 letter from NCC, Ultimate retained Brenner Saltzman & Wallman ("BSW") to represent it in communications with NCC regarding coverage offered under the Policies. On the day of the mediation, Brenner Saltzman & Wallman communicated with NCC, sharing documentation from the D.O.L.'s own website, treatises published on Wage and Hour law and other sources, which used the terms, "back pay" and "back wages" interchangeably, which materials and communications are attached collectively as Exhibit F.

12. Thereafter, to avoid attorneys' fees and other expenses of litigation and potential exposure for a larger judgment, and to avoid D.O.L. action which would bar Ultimate's future use of the H-2B program, thereby losing many foreign workers whom it had employed for ten or more years, Ultimate negotiated a settlement of the Claim with the D.O.L., agreeing to pay back wages in the amount of $280,000, in addition to other terms ("Settlement"). Throughout the mediation, NCC received information about the status of negotiations and did not express any objection to the proposed terms reached between Ultimate and the D.O.L.

## COVERAGE UNDER THE POLICIES

13. The Policies state, in their Wage and Hour Endorsement, that NCC "shall pay the Loss of the Insureds which the Insureds have become legally obligated to pay by reason of a Wage and Hour Claim." The main body of the Policies states that, "Loss means the damages, judgments, settlements, front pay and back pay, pre-judgment or post judgment interest awarded by a court, and Costs, Charges and Expenses incurred by any of the Insureds." However, "Loss does not include...i. any amount owed as wages to any Employee, other than front pay or back pay...."

14. The 2012 Policy requires Ultimate to pay a self-insured retention ("SIR") of $10,000, before NCC will make any payment under the Policy. Ultimate has paid Jackson Lewis at least $10,000, in full satisfaction of the SIR.

15. The Wage and Hour Endorsements of the Policies set a limit of $250,000 total coverage for any defense costs and/or the amount of any settlement or judgment paid on behalf of Ultimate.

16. NCC relies primarily on the definition of Loss set forth above to deny coverage, asserting that the remedy of "back wages" which the D.O.L. designated in the Complaint, are "wages," and not "back pay," and thus is excluded from coverage. See NCC letters, attached as Exhibits C and E.

17. Following the Settlement, BSW again wrote to NCC, offering additional documentation and citing to case law in which "back pay" and "back wages" were used interchangeably, maintaining that Policy language specifying that awards for "back pay" would be covered would apply to the settlement for payment of "back wages" and again requesting that NCC contribute to the settlement reached by Ultimate with the D.O.L.. BSW letter dated, July 3, 2014, attached as Exhibit G.

18. NCC continued to refuse to contribute any money toward payment of the settlement, instead retaining counsel, Keith Little of Bailey Cavalieri LLC, which issued a letter dated July 30, 2014, again reiterating that NCC would not pay any sums toward the Settlement. Letter by NCC counsel attached as Exhibit H.

19. BSW responded to that letter, pointing NCC counsel to additional legal authority, including but not limited to opinions of the United States Supreme Court, in which "back pay" and "back wages" are used interchangeably to refer to damages available for wage and hour violations awarded to individuals and the D.O.L. under various federal statutes. BSW letter dated, September 8, 2014, attached as Exhibit I.

20. To date, NCC continues to refuse to contribute any sum toward payment of the settlement. To date, upon information and belief, NCC has paid no money to Jackson Lewis for its defense of the Claim or negotiation of the Settlement.

## DAMAGES

21. Because NCC wrongfully denied coverage for the Claim under the Policies, Ultimate must itself pay the full amount of the settlement of the Claim, rather than be indemnified for any sums paid in excess of the SIR under the Policy. Ultimate also have to pay defense costs in excess of the SIR previously paid.

## COUNT ONE: Breach of Contract

1-19. Paragraphs 1 through 19 of the preceding sections are hereby incorporated as Paragraphs 1 through 19 of Count One, as if fully set forth herein.

20. Despite Ultimate's full compliance with the terms of the Policies, including timely payment of premiums due thereunder and payment of the full SIR under the 2012 Policy, NCC has refused to indemnify Ultimate for the Claim in accordance with the terms of the Policy. NCC has also failed to date to pay any sums for the defense of the Claim.

21. Such refusal and failure on the part of NCC constitutes a breach of the terms of the Policies.

22. As a result of NCC's, Ultimate has suffered significant damages for which NCC is liable.

WHEREFORE, Plaintiff claims:

1. Compensatory damages.

2. Such other and further relief as the Court deems just and proper.

          PLAINTIFF
          Ultimate Professional Grounds
          Management, Inc.

By: */s/ Holly Winger*
     Holly Winger (CT 04866)
     BRENNER, SALTZMAN & WALLMAN LLP
     Its Attorneys
     271 Whitney Avenue
     New Haven, CT  06511
     Tel.: (203) 772-2600
     Fax: (203) 562-2098
     Email: hwinger@bswlaw.com

CJ8855